**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Mark A. Fortin

    v.                                              Case No. 10-cv-441-JL

Michael J. Astrue, Commissioner,
Social Security Administration

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Mark Fortin moves to reverse the Commissioner's decision denying his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Commissioner, in turn, moves for an order affirming his decision. For the reasons given below, I recommend that this matter be remanded to the Administrative Law Judge ("ALJ") for further proceedings consistent with this report and recommendation.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment

> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Commissioner] has committed a legal or

factual error in evaluating a particular claim.'"  Manso-Pizarro

v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting

Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

     As for the statutory requirement that the Commissioner's

findings of fact be supported by substantial evidence, "[t]he

substantial evidence test applies not only to findings of basic

evidentiary facts, but also to inferences and conclusions drawn

from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916,

917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727,

730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more

than [a] mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401

(1971)).  But, "[i]t is the responsibility of the [Commissioner]

to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material Facts, doc. no. 14.  That statement is part of the court's record and will be summarized here, to the extent necessary, rather than repeated in full.

From December of 2003 through June of 2004, Fortin received treatment at Northern Human Services for, among other things, bipolar disorder.  From June of 2007 through April of 2010, he received treatment from Coos County Family Health Services ("CCFHS") which consisted largely of routine follow-ups for

several conditions, including bipolar disorder. His treatment
for bipolar disorder consisted exclusively of medication. It
does not appear from the record that Fortin was ever examined or
treated by a psychiatrist or psychologist associated with CCFHS.
Apart from several reports by Fortin himself, the only mention
of his mental health in the CCFHA records consists of reports on
two mental-status exams. The first, conducted by Dr. Lionel
Jospitre on November 1, 2007, resulted in the following report:

> Judgment, insight: intact
> Orientation: oriented to time, place and person
> Memory: intact for recent and remote events
> Mood and affect: no depression, anxiety, or agitation

Tr. 257. A similar entry was made in a November 25, 2009, note
by Dr. Geoffrey Kamen:

> Judgment, insight: intact
> Orientation: oriented to time, place, and person
> Memory: intact for recent and remote events
> Mood and affect: no depression, anxiety, or agitation

Tr. 406. The two notations quoted above are the only CCFHA
records that include statements about Fortin's mental health
made by health-care providers.

In July of 2008, Fortin applied for both disability
insurance benefits and supplemental security income. In his
Disability Report, in response to a question about how his
impairment(s) limited his ability to work, he stated: "I can't
deal with the stress and I get overwhelmed, I get very emotional

and I can't concentrate." Administrative Transcript (hereinafter "Tr.") 160. In a Claimant Psychological Questionnaire, he reported: "I have stress, very little patience, and [am] depressed," and "I can't concentrate to do my job that I have been doing for 15 years or more." Tr. 182. Subsequently, Disability Determination Services forwarded a Mental Impairment Questionnaire to CCFHS. CCFHS returned the form without filling it out, explaining that Fortin's health-care provider did not think the form could be completed without a mental-health evaluation. Tr. 224.

In September of 2008, Dr. Elizabeth Hess examined Fortin and performed a consultative psychological evaluation. Dr. Hess began her report by describing Fortin in the following way:

> He is casually but neatly dressed and groomed. He shows a very low level of energy throughout the evaluation. However, he is polite and cooperative, and enjoys interacting with the examiner. His conversation tends to be tangential. He is a poor historian. Frequently, he leaves out information or information contradicts other information which he has given without his awareness. Specific structured questioning finally allows the development of a coherent history.

Tr. 278. Dr. Hess performed an "assessment of sensorium function," and reported:

> The assessment of sensorium function showed that he is oriented in all spheres. His IQ is most likely in the average range. He had latency in recall of facts from memory and has trouble remembering some basic personal information. He appears to be able to learn, but is

likely to be somewhat inefficient at this.  He shows
marked deficits in attention and concentration.  He
cannot spell "world" backwards and cannot subtract
serial 7's.  His fund of information appears adequate
for a person of his education.

Tr. 280-81.  Based upon her examination, Dr. Hess offered the

following opinions concerning Fortin's then-current level of

functioning:

Understanding and Memory:  This individual is capable
of understanding and remembering basic work
instructions.

Social Functioning:  This individual usually can
interact appropriately with others; however, if he is
stressed, he has been known to become violent,
especially in terms of difficulties with long-term
relationships.

Concentration and Task Completion:  This individual
will have significant difficulty sustaining attention
and completing tasks, especially if he becomes
anxious.

Adaptation to Work or Work-Like Situations:  This
individual has difficulty tolerating typical work
stressors, especially if the pace is too fast he
becomes quite anxious and uncomfortable.  He may have
difficulty making decisions in such situations.  He
does not have any particular difficulty interacting
with supervisors or customers.

Tr. 281.

About a month later, Dr. Michael Schneider, a state-agency

medical consultant, completed a Mental Residual Functional

Capacity Assessment on Fortin.  With regard to "sustained

concentration and persistence," Dr. Schneider found Fortin to be

moderately limited in his ability to carry out detailed

instructions, Tr. 297, but found him to have no significant

limitations in seven other areas, including the ability to

maintain attention and concentration for extended periods, id.

As for Dr. Hess's assessment, Dr. Schneider had this to say:

> The claimant alleges limitations in being able to
> understand, remember and carry out instructions,
> maintain attention, as well as being able to get along
> with others.  There is some credibility for these
> allegations based on her [sic] recent psychological
> [evaluation] with Dr. Hess.  Some weight is given to
> her opinions of function, though she seems to suggest
> the level of dysfunction that is not commensurate with
> the objective data.

Tr. 299.  Dr. Schneider did not, however, indicate what

objective data he found to be incommensurate with Dr. Hess's

opinion.  And, while Dr. Schneider stated that Fortin "is able

to sustain attention and complete a normal work week," id., he

did not identify any evidence supporting that conclusion other

than the fact that, at the time of the assessment, Fortin was

working five hours a day at a restaurant.[1]

In February of 2010, Dr. Kamen, Fortin's provider at CCFHS,

referred Fortin to Dr. Erinn Fellner for a psychiatric

consultation.  Dr. Fellner conducted a mental status examination

and reported, among other things:

---

[1] At his hearing, Fortin testified that he only worked the
dinner shift because he could not tolerate the pace of the
breakfast and lunch shifts.  Tr. 35.  He further testified that,
ultimately, he had to quit working even part-time at the
restaurant because it was too stressful for him.  Id.

> Unable to perform serial 7's.  Has difficulty with
> serial 3's but is able to perform these tasks but
> needs frequent redirection.  Is able to name past four
> presidents.  Intelligence average.  Thought process
> coherent but quite tangential and often loses train of
> thought and does not answer initial question asked
> without redirection.

Tr. 376.  She further reported: "He does have residual problems

with low stress tolerance, tangential thought process,

distractability and difficulty completing tasks.  These are not

uncommon even with [treatment] in bipolar disorder."  Id.

Based upon her examination, Dr. Fellner completed a Medical

Source Statement of Ability to Do Work-Related Activities

(Mental).  With regard to sustained concentration and

persistence, Dr. Fellner found that Fortin had moderate

limitations in his ability to: (1) carry out very short and

simple instructions; (2) sustain an ordinary routine without

special supervision; and (3) make simple work-related decisions.

Tr. 387-88.  She further found that he had marked limitations in

his ability to: (1) carry out detailed instructions; (2)

maintain attention and concentration for extended periods; (3)

perform activities within a schedule, maintain regular

attendance, and be punctual with customary tolerances; (4) work

in coordination with or proximity to others without being

distracted by them; and (5) complete a normal work day and work

week without interruptions from psychologically based symptoms

and to perform at a consistent pace without an unreasonable number and length of rest periods.  Id.

     With regard to social interaction, Dr. Fellner found that Fortin had moderate limitations in his ability to ask simple questions or request assistance.  Tr. 388.  She further found that he had marked limitations in his ability to: (1) interact appropriately with the general public; (2) accept instructions and respond appropriately to criticism from supervisors; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (4) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  Id.

     With regard to adaptation, Dr. Fellner found that Fortin had moderate limitations in his ability to: (1) be aware of normal hazards and take appropriate precautions; and (2) travel in unfamiliar places or use public transportation.  Tr. 388.  She further found that he had marked limitations in his ability to: (1) respond appropriately to changes in the work setting; and (2) set realistic goals or make plans independently of others.  Id.

     Dr. Fellner also opined that Fortin had "difficulty maintaining social relationships due to erratic & aggressive behavior/moods."  Tr. 389.  Finally, she indicated that her

opinion was based on a "complete psychiatric evaluation."  Id.

After conducting a hearing, the ALJ issued a decision that includes the following findings of fact and conclusions of law:

> 3. The claimant has the following severe impairments: alcohol abuse in remission since August 20, 2009, bipolar disorder and arthritis of the right knee status post a remote injury (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited from performing any climbing of ladders, ropes or scaffolds.  He required a work environment that is free from fast paced production requirements.  Task[s] need to be short and sequential without requirements to multi-task.  The claimant is able to engage in superficial interactions with the public and with co-workers.
>
> . . . .
>
> 6. The claimant is capable of performing past relevant work as a cook and waiter.  This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

Tr. 10, 12, 14.

**Discussion**

According to Fortin, the ALJ's decision should be reversed because the ALJ: (1) failed to give any reasons for rejecting the opinion of Dr. Hess; (2) gave reasons for rejecting Dr. Fellner's opinion that are not supported by substantial evidence; (3) made a residual functional capacity ("RFC") assessment that is not supported by substantial evidence; and (4) failed to properly evaluate his subjective complaints.  The Commissioner disagrees, categorically.

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this case is whether Fortin was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A)

(setting out a similar definition of disability for determining eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also 42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for determining eligibility for SSI benefits).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

12

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) plaintiff's
> subjective claims of pain and disability as supported
> by the testimony of the plaintiff or other witness;
> and (3) the plaintiff's educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

### A. Medical-Opinion Evidence

Fortin argues that the ALJ's decision should be reversed because the ALJ erred in the way he handled the opinions of both Dr. Hess and Dr. Fellner.  Fortin is correct.  Accordingly, this Report and Recommendation focuses primarily on the manner in which the ALJ dealt with the medical opinion evidence and discusses Fortin's other arguments only briefly.

As a preliminary matter, the court notes that the mental-health aspect of this case is somewhat unusual in that there is

13

no medical opinion from a treating source.  Rather, the record

consists of two medical opinions from examining sources and one

from a state-agency consultant.  That said, the court begins by

outlining the relevant legal principles and then discusses the

way in which the ALJ handled each of the three medical opinions

in the record.

"Medical opinions are statements from physicians and

psychologists . . . that reflect judgments about the nature and

severity of [a claimant's] impairment(s), including [a

claimant's] symptoms, diagnosis and prognosis, what [a claimant]

can still do despite impairment(s), and [a claimant's] physical

or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1) and

416.927(a)(1).  When there are inconsistencies in the evidence,

including the medical opinions, an ALJ is obligated to weigh all

the evidence.  20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

As a general rule, more weight should be given to opinions from

medical sources who have examined a claimant than to opinions

from nonexamining medical sources.  See 20 C.F.R. §§

404.1527(d)(1) and 416.927(d)(1).  But, at the same time, the

regulations acknowledge that "State agency medical and

psychological consultants . . . are highly qualified physicians

and psychologists who are also experts in Social Security

disability evaluation."  20 C.F.R. §§ 404.1527(f)(2)(i) and

416.927(f)(2)(i).  An ALJ is obligated to evaluate every medical

opinion in the record.  See 20 C.F.R. §§ 404.1527(d) and

416.927(d).  Finally, "the administrative law judge must explain

in the decision the weight given to the opinions of a State

agency medical or psychological consultant . . . as the

administrative law judge must do for any opinions from treating

sources, nontreating sources, and other nonexamining sources."

20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii); see also

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7

("The RFC assessment must always consider and address medical

source opinions.  If the RFC assessment conflicts with an

opinion from a medical source, the adjudicator must explain why

the opinion was not adopted.") (emphasis added).

### 1. Dr. Hess

Fortin argues that the ALJ committed reversible error by

rejecting Dr. Hess's opinion without giving any reasons for

doing so.  The Commissioner contends that the ALJ permissibly

rejected Dr. Hess's limitations regarding concentration,

persistence, and pace, and that Fortin has waived any argument

that the ALJ did not properly consider Dr. Hess's opinion.

Neither defense of the ALJ's decision is persuasive.

The ALJ's sole mention of Dr. Hess's opinion appears in the

section of the decision in which the ALJ determined that Fortin

did not have a listing-level mental impairment, because his condition did not satisfy the "paragraph B" criteria of listing 12.04:

> While the record does indicate that the claimant has worked on a part-time basis as a waiter since his alleged onset date, Dr. Hess did note that he had some difficulties with motivation and with attention and concentration.  However, records from Coos County Family Health Services do not document such difficulties.  Still, Dr. Fellner did indicate that the claimant was unable to perform serial 7s testing and that he exhibited tangential thought processes. The undersigned therefore accepts the opinion of State Agency reviewing psychologist Dr. Schneider that the claimant has moderately impaired functioning in this domain.

Tr. 11-12 (citation to the record omitted).  Whatever else may be said of the paragraph quoted above, it cannot fairly be described as an explanation of the weight the ALJ gave Dr. Hess's opinion of Fortin's capacity to perform work-related activities.  And, it certainly does not explain why the ALJ made an RFC finding that conflicts with Dr. Hess's opinion.

In the section of the decision devoted to assessing Fortin's RFC, where the ALJ did mention Dr. Fellner's opinion, he said nothing about Dr. Hess's opinion, or the weight he gave it.  The ALJ was obligated to explain the weight he gave Dr. Hess's opinion in his RFC assessment.  See SSR 96-8p, 1996 WL 374184, at *7.  He did not do so, and it is not the role of the Commissioner or the court to fashion a rationale under which the

ALJ could have sustainably rejected Dr. Hess's opinion.  See
Dube v. Astrue, No. 1:10-cv-179-JL, 2011 WL 742520, at *6 n.15
(D.N.H. Feb. 24, 2011) ("[C]ounsel for the Commissioner ably
posits numerous reasons '[l]ending support to the ALJ's
disregard of Dr. Southworth's limitational assessments." . . .
It is the responsibility of the ALJ to undertake that analysis
in the first instance, not the court."); Bray v. Comm'r of Soc.
Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); Grogan v.
Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Golembiewski v.
Barnhart, 322 F.3d 912, 916 (7th Cir. 2003).  The ALJ's failure
to consider and assess Dr. Hess's opinion in the context of his
RFC assessment warrants reversal and remand.  See Costa v.
Astrue, No. 1:09-cv-441-JL, 2010 WL 4365868, at *7 (D.N.H. Nov.
3, 2010).

     The Commissioner's attempts to defend the ALJ's decision,
while ineffective, merit some discussion.  First, the fact that
Fortin's CCFHS treatment records do not document the limitations
Dr. Hess found is not nearly as significant as the Commissioner
suggests.  While it is true that those records do not document
any functional limitations resulting from Fortin's bipolar
disorder, it is important to bear in mind that Dr. Hess was
called upon to perform a psychological evaluation precisely
because Fortin's treating sources at CCFHS expressly declined to

fill out a mental impairment questionnaire.  Thus, there is a
perfectly good reason why Fortin's CCFHS records do not document
functional limitations similar to those found by Dr. Hess; Dr.
Hess appears to have been the first mental-health professional
to examine Fortin and assess his mental functional capacity.
That the CCFHS records do not contain answers to questions that
were never asked is no basis for rejecting the answers contained
in Dr. Hess's report.

The Commissioner also argues that Fortin has waived any
challenge based on Dr. Hess's proposed limitations because, at
his hearing, Fortin's counsel posed a hypothetical question
based on Dr. Fellner's limitations but did not pose a
hypothetical based on Dr. Hess's limitations.  According to the
Commissioner, Fortin is now bound by his litigation strategy at
the hearing.  That argument misses the point.  The question here
is whether or not the ALJ gave an adequate explanation for the
weight he gave Dr. Hess's opinion.  The ALJ's obligation to give
such an explanation is specified in the applicable regulations,
and it is unconditional.  Nothing in the regulations suggests
that an ALJ's obligation to explain the weight he or she gives a
medical opinion is either triggered or extinguished by the
nature of the hypothetical questions posed to a VE by a claimant
at a hearing.

To be sure, Mills v. Apfel, 244 F.3d 1 (1st Cir. 2001) contemplates that a Social Security claimant can waive an issue by failing to raise it before the ALJ.  But that case and this one are hardly on all fours.  In Mills, the ALJ determined, at step four, that the claimant could perform several past jobs. Id. at 8.  On appeal, the claimant argued that because she had not performed the jobs the ALJ identified long enough for them to qualify as past relevant employment, the ALJ erred by failing to make a step-five determination.  Id.  The First Circuit held that the claimant waived the issue by failing to raise it, during her hearing, when the ALJ could have corrected the alleged error by moving on to step five.  Id.

The error alleged in this case concerns what the ALJ included in his decision, not the manner in which he conducted Fortin's hearing.  There was nothing that Fortin should have discovered, or even could have discovered, at the hearing to alert him that the ALJ was not going to properly evaluate Dr. Hess's opinion.  Rather, at his hearing and thereafter, Fortin was entitled to presume that ALJ would properly explain the weight he gave to Dr. Hess's opinion, and was under no obligation to do anything at the hearing to prompt the ALJ to write a decision that complies with the regulatory requirements. In sum, the Commissioner's waiver argument is unavailing.

19

### 2. Dr. Fellner

Fortin next argues that the ALJ's rejection of Dr. Fellner's opinion is not supported by substantial evidence.  The Commissioner disagrees.  Again, Fortin has the better argument.

In his decision, the ALJ mentioned Dr. Fellner's report twice, first in the portion of his step-three determination quoted above, and again in the context of his RFC assessment.  In support of his RFC assessment, the ALJ wrote:

> As for the opinion evidence, the undersigned has carefully considered the statement offered by Dr. Fellner . . . that the claimant has moderate limitations even performing short simple instructions with markedly impaired ability to perform detailed instructions.  Dr. Fellner has also asserted that the claimant has moderate to markedly impaired social functioning and ability to adapt to changes.  However, Dr. Fellner has not treated the claimant and evaluated him on only one occasion.  The observations offered by this source are not well-supported by any clinical observations and, in fact, are contradicted by clinical records from Coos County Family Health Services where the claimant has been treated for many years.  Therefore, this opinion is afforded little weight.

Tr. 14 (citation to the record omitted).  For reasons that are unclear, the ALJ said nothing about Dr. Fellner's opinions regarding Fortin's abilities in the areas of maintaining attention and concentration, working within a schedule, avoiding distractions while working with others, and completing a normal work day and work week, at a consistent pace, without interruption from psychologically based symptoms.

The Commissioner is correct that it falls to the ALJ to resolve conflicts in the evidence.  See Irlanda Ortiz, 955 F.2d at 769.  But, still, an ALJ's decision must be supported by substantial evidence.  In this case, the ALJ's stated reasons for giving little weight to Dr. Fellner's opinions are not supported by substantial evidence.

First, while the ALJ says that Dr. Fellner's "observations . . . are not well-supported by any clinical observations," Dr. Fellner's Medical Source Statement clearly indicates that it was based on a "complete psychological evaluation."  Tr. 389.  Her narrative report documents her use of various tests, including serial 7s, serial 3s, and a request that Fortin name the past four presidents.  The results of Dr. Fellner's testing must surely count as clinical observations, and the Commissioner does not argue to the contrary.

Similarly unsupported is the ALJ's conclusion that Dr. Fellner's opinion is contradicted by Fortin's treatment records from CCFHS.  Fortin's CCFHS records do include the two four-line reports of mental-status exams quoted above, but nothing else pertaining to the effects of Fortin's bipolar disorder.  Specifically, the records include neither a complete psychiatric evaluation nor a Medical Source Statement of Ability to Do Work-Related Activities (Mental), nor any opinion of any kind

concerning Fortin's mental functional capacity.  Moreover, there
is no indication that any CCFHS provider ever performed the kind
of evaluation and testing that is documented in Dr. Fellner's
report.  So, as a logical matter, it is difficult to see what in
the CCFHS clinical records could possibly contradict Dr.
Fellner's opinion.  Fortin's CCFHS records and Dr. Fellner's
evaluation appear to be apples and oranges.  Perhaps for that
reason, the ALJ spoke only generally; he did not say what CCFHS
records contradicted Dr. Fellner's opinion.  Thus, the ALJ's
decision is not supported by substantial evidence, and it must
be remanded for a proper consideration of Dr. Fellner's opinion.

      After stripping away the explanations that are not
supported by substantial evidence, all that remains is the ALJ's
statement that Dr. Fellner was not a treating source, and that
she examined Fortin only once.  That is an inadequate basis for
discounting Dr. Fellner's opinion in favor of the opinion Dr.
Schneider, a medical source who neither treated nor examined
Fortin.  See 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1)
("Generally, we give more weight to the opinion of a source who
has examined you than to the opinion of a source who has not
examined you.").  In sum, the ALJ has identified no substantial
evidence in the record to support his decision to deviate from
the general principle of affording more weight to the opinions

of examining sources than to the opinions of nonexamining
sources.

### 3. Dr. Schneider

While Fortin does not directly challenge the ALJ's handling
of Dr. Schneider's opinion, the court makes the following
observations.  First, while the ALJ did indicate his reliance on
Dr. Schneider's opinion in determining that Fortin did not
suffer from a listing-level mental impairment, he did not
mention Dr. Schneider's opinion in his determination of Fortin's
RFC, and did not expressly evaluate Dr. Schneider's opinion.
Thus, the ALJ's decision does not properly explain the weight
the ALJ gave to Dr. Schneider's opinion.  That is a legal error.
See 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) ("the
administrative law judge must explain in the decision the weight
given to the opinions of a State agency medical or psychological
consultant" (emphasis added)); SSR 96-8p, 1997 WL 374184, at *7
(explaining that an ALJ's evaluation of medical-source opinions
must be a part of his or her RFC assessment).

Moreover, in his defense of the ALJ's decision not to give
significant weight to Dr. Fellner's opinion, the Commissioner
points out the statement in the regulations that "State agency
medical and psychological consultants . . . are highly qualified
physicians and psychologists who are also experts in Social

Security disability evaluation."  20 C.F.R. §§ 404.1527(f)(2)(i) and 416.1527(f)(2)(i).  That may be, but the regulations make that statement in support of the requirement that "administrative law judges must consider findings of State agency medical and psychological consultants . . . as opinion evidence," id., not for the proposition that the opinions of nonexamining medical sources are entitled to weight greater than or equal to the weight that should be given to the opinions of examining sources.  Moreover, such an interpretation of §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) is foreclosed by §§ 404.1527(d)(1) and 416.927(d)(1), which expound the general principle that opinions from examining sources are entitled to greater weight than opinions from nonexamining sources.

### B. Other Issues

Because the ALJ's decision must be remanded for a proper consideration of the medical-opinion evidence, there is no need to address the other issues Fortin raises.  But, in the interest of providing guidance on remand, the court makes the following observations.

### 1. Fortin's Work as a Cook

The ALJ said that Fortin "worked as a cook 25 hours per week and earned $2.38 plus tips."  Tr. 13.  At the hearing,

Fortin testified that he earned $2.38 per hour, for twenty-five hours a week, as a waiter not as a cook. Tr. 26. There is not substantial evidence in the record for the ALJ's finding.[2] Next, while the ALJ determined that Fortin was "capable of performing past relevant work as a cook," Tr. 14, the VE testified, in response to the ALJ's hypothetical questions, that Fortin did not have the RFC to work as a cook. Tr. 47-49. Again, there appears to be no evidence in the record to support the ALJ's finding. Finally, the Commissioner argues that Fortin waived any challenge to the ALJ's determination that he had past relevant work as a cook by failing to object to such a finding at the hearing. However, because the VE testified that Fortin could not work as a cook, Fortin had no reason to think that the ALJ would find that he had the RFC to work as a cook, which gave him no reason to point out that he had not worked as a cook recently enough for that job to count as past relevant work. Accordingly, the Commissioner's waiver argument is not persuasive.

---

[2] For his part, the Commissioner points to a sentence in the "History of Present Illness" section of Fortin's first CCFHS medical record ("He is working as a chef."), but that piece of evidence amounts to no more than a mere scintilla.

## 2. The ALJ's Credibility Assessment

Fortin also challenges the ALJ's credibility assessment, on a variety of grounds.  Rather than reviewing the ALJ's credibility assessment in detail, the court limits itself to the following observation.  As required by SSR 96-7p, 1996 WL 374186, the ALJ determined that Fortin's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms."  Tr. 13.  The symptoms to which the ALJ referred included both knee pain and symptoms associated with bipolar disorder.  With respect to the latter, the ALJ assessed one of the Avery factors, i.e., Fortin's daily activities, but before doing so, the ALJ did not determine whether Fortin's "statements about the intensity, persistence, or functionally limiting effects of [his] symptoms [were] substantiated by objective medical evidence," which is the necessary prerequisite for making a credibility determination.  SSR 96-7p, 1996 WL 374186, at *2.  On remand, the ALJ should evaluate the objective medical evidence supporting (or not supporting) Fortin's statements about his symptoms before making a finding on the credibility of those statements.

**Conclusion**

For the reasons given, I recommend that: (1) the Commissioner's motion for an order affirming his decision, doc. no. 13, be denied; and (2) Fortin's motion to reverse the decision of the commissioner, doc. no. 10, be granted to the extent that the case is remanded to the ALJ for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

Any objection to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauth. Pract. of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

Dated: May 18, 2011

cc:  Raymond J. Kelly, Esq.
     Robert J. Rabuck, Esq.